<div style="writing-mode: vertical-rl">**United States District Court**
For the Northern District of California</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>SYLVESTER FRANK ENEA and MIMI CLAIRE ENEA,<br>　　　　Debtors.<br>———————————————————/<br>In re:<br>PAUL JOSEPH ENEA and CLAIR THEODORA ENEA,<br>　　　　Debtors.<br>———————————————————/<br>DOUBLE BOGEY, L.P.,<br>　　　　Appellant,<br>　v.<br>SYLVESTER FRANK ENEA and PAUL JOSEPH ENEA,<br>　　　　Appellees.<br>———————————————————/ | No. C 12-01877 SI<br><br>**Bankr. Case No. 09-46304**<br>**Bankr. Case No. 09-48602**<br><br>**Adv. Proc. No. 11-3017 DM**<br>**Adv. Proc. No. 11-3018 DM**<br>**Consolidated**<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL** |

Appellant Double Bogey, L.P., filed adversary proceedings seeking a finding of non-dischargeability pursuant to section 523(a)(4) of the Bankruptcy Code, as to debt incurred by Chapter 7 debtors Paul and Sylvester Enea. After a five day trial, and at the conclusion of Double Bogey's evidence, Judge Dennis Montali of the United States Bankruptcy Court of the Northern District granted the debtors' Motion for Judgment on Partial Findings, Fed. R. Bankr. P. § 7052(c). Double Bogey now appeals that decision. Upon consideration of the record and the papers submitted, the Court AFFIRMS the bankruptcy court's judgment in favor of debtors.

## BACKGROUND

In its decision granting the Eneas' motion, the bankruptcy court found the following facts uncontested. Double Bogey had a stake in two real estate development entities: it was the limited partner in 1221 Monticello, L.L.P.; and it was one of several members of Monterrosa, L.L.C. Oral Decision ("Order"), Bankr. Case No. 11-3017, ECF No. 123 at 4-5. Appian Construction Company, Inc., a corporation owned by debtor Paul Enea and of which debtors Paul and Sylvester Enea were the sole executive officers, was the general partner of Monticello and the managing member of Monterrosa. *Id.* at 5. Double Bogey invested over four million dollars in Monticello and over one million in Monterrosa. *Id.* Double Bogey lost its entire investment in Monterrosa, and although it recovered its invested funds in Monticello, it did not receive "substantial amounts of interest in profit participation that it claims to be in the amount of several million dollars." *Id.*

In 2009, via Chapter 7 bankruptcy proceedings, the Eneas both received discharges of their debts, including those claimed by Double Bogey. *Id.* Double Bogey challenged that finding in adversary proceedings pursuant to section 523(a)(4) of the Bankruptcy Code. Double Bogey specifically contends that Appian Construction Company was Double Bogey's fiduciary; that its liability to Double Bogey arose out of "defalcation while acting in a fiduciary capacity" and as such was nondischargeable; and that because Paul and Sylvester Enea were the alter egos of Appian Construction, nondischargeability under section 523(a)(4) should likewise apply to them. *Id.* at 6.

Defalcation occurs when a debtor fails to pay back or account properly for "trust funds or money held in a fiduciary capacity." *Blyler v. Hemmeter (In re Hemmeter)*, 242 F. 3d 1186, 1190 (9th Cir. 2001).

After Double Bogey had presented its case-in-chief during five days of testimony, the Eneas moved for judgment on partial findings. Order at 4. On February 10, 2012, the bankruptcy court granted the motion. He found that Appian Construction was a fiduciary to Double Bogey with respect to the latter's investments in Monticello and Monterrosa, *id.* at 6, 10, and that Double Bogey had established a *prima facie* case that the Eneas were Appian's "alter ego." *Id.* at 8. However, the bankruptcy court held that section 523(a)(4) of the Bankruptcy Code, precluding discharge, applies only to fiduciary relationships created by express or statutory trust, and not to fiduciary relationships which

2

result by operation of law as a result of acts of wrongdoing (trusts *ex maleficio*). Thus, although Appian Construction's uncontested fiduciary relationship to Double Bogey did implicate section 523(a)(4), Paul and Sylvester Eneas' individual fiduciary status resulted only from their misconduct/alter ego status; thus, section 523(a)(4) nondischargeability would not apply. The court also found that the Eneas could not be directly liable because there was no trust *res*.

Therefore, the court granted the Eneas' motion on the ground that Double Bogey had failed to state a claim that the Eneas' may not discharge debts that incurred as a result of Appian's alleged defalcation. *Id.* at 4. This appeal challenges those findings.

## STANDARD OF REVIEW

A Rule 7052(c) motion for judgment on partial findings incorporates the precise language of Rule 52(c) of the Federal Rules of Civil Procedure. It provides that judgment on partial findings, in a non-jury trial, is appropriate where the plaintiff fails to make out a *prima facie* case, or where the court determines that the preponderance of the evidence goes against plaintiff's claim. Fed. R. Bank. P. § 7052(c); *In re Stearman*, 256 B.R. 788, 791 (B.A.P. 9th Cir. 2000). Such a judgment shall be supported by findings of fact and conclusions of law.

In reviewing bankruptcy court judgments, a district court functions as an appellate court. The bankruptcy judge's findings of fact under section 7052(c) are thus reviewed for clear error, while its conclusions of law are reviewed *de novo*. *In re Lund*, 202 B.R. 127, 129 (B.A.P. 9th Cir. 1996). Mixed questions of law and fact are also reviewed *de novo.* *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998). Finally, this Court may not make independent factual findings. If the bankruptcy court is silent or ambiguous as to an outcome-determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings. *See In re Carter*, 182 F.3d 1027, 1034 (9th Cir. 1999).

## DISCUSSION

With certain enumerated exceptions, "[t]he effect of a discharge in bankruptcy is to release a bankrupt from all of his provable debts." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331(1934).

1 The exceptions to dischargeability are listed in section 523 of the Bankruptcy Code, and include "any
2 debt for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4); *In re Short*,
3 818 F.2d 693, 694 (9th Cir. 1987). Double Bogey argues that the Eneas committed defalcation while
4 acting as the fiduciary of Double Bogey's money in Monticello and Monterrosa, and therefore they
5 should not be discharged from their debts. Double Bogey agues two forms of liability for the Eneas:
6 (1) as the alter ego of Appian, and (2) direct liability in their individual capacity as corporate officers.

**I.   Section 523(a)(4) Nondischargeability – Alter Ego Status**

The bankruptcy court found that, as a matter of law, Double Bogey could not obtain a finding of nondischargeability under section 523(a)(4), based on the Eneas' alter ego status with Appian. In reviewing this finding *de novo*, the Court agrees with the bankruptcy court. Therefore, even if Appian was a fiduciary to Double Bogey and committed defalcation, the alter ego doctrine may not be used in this case render any liability of the Eneas nondischargeable in bankruptcy.

"Whether a person is a fiduciary under § 523(a)(4) is a question of federal law." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996) (citing *Ragsdale v. Haller (In re Haller)*, 780 F.2d 794, 795 (9th Cir. 1986)). "The broad definition of fiduciary under nonbankruptcy law–a relationship involving trust, confidence, and good faith–is inapplicable in the dischargeability context." *In re Honkanen*, 446 B.R. 373, 378 (B.A.P. 9th Cir. 2011). As the Ninth Circuit has explained, "[f]rom 1884 to the present, courts have construed 'fiduciary' in the bankruptcy discharge context as including express trusts, but excluding trusts *ex maleficio*, *i.e.*, trusts that arose by operation of law upon a wrongful act. We have adhered to this construction in interpreting the scope of 11 U.S.C. § 523(a)(4), refusing to deny discharge to those whose fiduciary duties were established by constructive, resulting and implied trusts." *In re Hemmeter*, 242 F.3d at 1189-90 (9th Cir. 2001) (citations omitted).

The alter ego doctrine sits squarely within the *ex maleficio* exclusion. The alter ego doctrine arises when an individual is unjustly and abusively using the corporate form as a shield for its misdeeds; in instances where a party perverts the corporate form, courts will "pierce the corporate veil" and hold the individual liable. *See* 9 Witkin, § 9, p. 785 (10th ed. 2005). Thus, the alter ego doctrine "is a device imposed by courts to disregard the corporate entity and hold individuals responsible for acts knowingly

4

1 and intentionally done in the name of the corporation." *In re Munson*, 6:10-BK-38482-SC, 2011 WL
2 845846, at *4 (Bankr. C.D. Cal. Mar. 9, 2011) (citing *Ivy v. Plyler*, 246 Cal. App. 2d 678, 682 (1966)).
3 The court in *In re Munson* concluded that imposing liability under the alter ego doctrine would
4 necessarily be imposing liability *ex maleficio*, because it operates to impose liability upon the individual
5 because of his wrongful acts. *Id.*

6 Stated another way, under § 523(a)(4) the fiduciary duty must arise from "an express, technical,
7 or statutory trust that was *imposed before* and without reference to the wrongdoing that caused the debt."
8 *Lewis*, 97 F.3d at 1185 (emphasis added); *see also Ragsdale*, 780 F.2d at 796. Here, only Appian owed
9 an express fiduciary duty to Double Bogey. The alter ego doctrine, used to pierce the corporate veil and
10 impose a fiduciary duty on the Eneas, could only be applied after wrongdoing. Therefore, any trust that
11 arises from the wrongdoing of the Eneas under the alter ego doctrine will be outside the purview of §
12 523(a)(4). *See also*, *Hunter v. Philpott*, 373 F.3d 873, 876-77 (8th Cir. 2004) (finding that because an
13 express trust under § 523(a)(4) "does not embrace trustees of constructive trusts imposed by law because
14 of the trustee's malfeasance," a debtor could not be liable "simply as an alter ego"); *In re Lupo*, 353 B.R.
15 534, 548 (Bankr. N.D. Ohio 2006) (finding that § 523(a)(4) requires the debtor to prove an independent
16 fiduciary duty, and refusing to apply the alter ego doctrine).

17 Double Bogey relies on many cases that impose liability on debtors who are the alter egos of
18 corporations. However, the cases that Double Bogey relies on impose liability directly, and do not stand
19 for the proposition that the alter ego doctrine can be used to create an express trust under § 523(a)(4).
20 *See, e.g.*, *In re Yarbrow*, 150 B.R. 233 (B.A.P. 9th Cir. 1993) (upholding the non-dischargeability of the
21 debts of an individual debtor who was the alter ego of a corporation, but based on the direct liability of
22 the debtor); *In re Baird*, 114 B.R. 198 (B.A.P. 9th Cir. 1990) (same).

23

24 **II. Direct Liability of the Eneas**

25 Double Bogey also argues that the Eneas, as Appian's sole corporate officers, "directly and
26 actively participated" in Appian's defalcation, and thus may be held personally liable for that
27 defalcation. Appt. Brief at 24. The bankruptcy court denied this claim on the ground that Double Bogey
28 had failed to show that any alleged direct participation involved an identifiable "trust *res*." Order at 15

5

(finding no "specific identification of funds that were at all times trust funds and that were improperly diverted"). This Court reviews the bankruptcy court's findings of law *de novo*, and its findings of fact for clear error.

### A.     Requirement of a Trust *Res*

"A debt is nondischargeable under 11 U.S.C. § 523(a)(4) where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997) (quotations omitted). The Ninth Circuit has explained that courts should look to state law to determine whether an express trust is created. *In re Baird*, 114 B.R. at 202. "The statute must define the trust *res*, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt." *Id.* A "trust *res*" is "money or property that is entrusted to the debtor-fiduciary." *In re Evans*, 161 B.R. 474, 478 (B.A.P. 9th Cir. 2001); *see also* Restatement (Second) of Trusts § 74 (1959) (a trust cannot be created unless there is a trust property). Even if a court finds that there are general fiduciary duties between the parties, that is "not sufficient [if there is an] absence of an express or technical trust relationship with an identifiable trust *res*." *Id.* The *Evans* court relied on *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir.2003), for its finding that a real estate agent was not given trust *res*, and therefore, even though state law created a general fiduciary duty between a real estate agent and her client, there was no express trust under § 523(a)(4).

### B.     The Lack of a Trust *Res* for Double Bogey

The bankruptcy court, after five days of hearing Double Bogey's case-in-chief, found as a factual matter that there was no trust *res*. It found that in the instant case, there was "no specific identification of any particular fund of money. There is no statute that says every dollar that comes into Monticello, to Apian, is impressed with the trust. There's no *res*." Order at 19. The bankruptcy court explained that "the very nature of the investment of Double Bogey in Monticello and Monte Rosa, impliedly, if not explicitly, recognizes that those funds would be spent and spent for what? Spent for obviously ultimately the costs and expenses in relation to the real estate development." *Id.* Therefore, the

6

1 bankruptcy court found that the monies that went from Appian to the Eneas were not trust *res* when they
2 were diverted to the Eneas.

3 This Court finds no clear error in this factual determination. "Under state law, the intent of the
4 parties is controlling in determining whether payment of funds is a loan or creation of a trust." *In re*
5 *Niles*, 106 F.3d 1456, 1463 (9th Cir. 1997) (citations omitted). The bankruptcy court emphasized the
6 fluid nature of Double Bogey's investment in the Monticello and Monterrosa entities. Order at 15.
7 Because the investments were used for diverse business purposes, and not held as an identifiable,
8 traceable fund, the court concluded that they could not constitute a trust *res* for the purpose of holding
9 the Eneas directly liable for defalcation. *Id.* Here, the issue of intent is one of fact and the court's
10 finding was not clearly erroneous.

11 Double Bogey argues that under California law, partnership assets are trust *res*. *See Ragsdale*,
12 780 F.2d at 797 (finding a fiduciary trust under § 523(a)(4) because a partner is a "trustee over
13 partnership assets for all purposes"). However, it is only Appian that is in partnership with Double
14 Bogey; the Eneas are mere stock owners or corporate officers. In *Cantrell*, the Ninth Circuit interpreted
15 California corporate law to conclude that while officers of a corporation have general fiduciary duties,
16 they are not trustees with respect to corporate assets and, therefore, are not fiduciaries within the
17 meaning of § 523(a)(4). 329 F.3d at 1126. It quoted the California Supreme Court as holding that
18 "[o]ne who is a director of a corporation acts in a fiduciary capacity, and the law does not allow him to
19 secure any personal advantage as against the corporation or its stockholders. However, strictly
20 speaking, the relationship is not one of trust, but of agency . . . ." *Id.* (quoting *Bainbridge v. Stoner*, 16
21 Cal. 2d 423, 426 (1940)). Thus, although under California law partners are trustees over partnership
22 assets, corporate officers are not trustees over corporate assets. Therefore, there is no showing that the
23 Eneas, as corporate officers, were trustees for Double Bogey or were given control of a trust *res*.

24 Double Bogey's reliance on *In re Baird* is also unpersuasive. In *In re Baird*, an Arizona state
25 law provided that money paid to a contractor was deemed to be held in trust for the benefit of the
26 subcontractor. 114 B.R. at 202. The *Baird* court found that this law created a trust *res* because it
27 expressly designated the funds received by the contractor as trust funds. The *Baird* court also found the
28 corporate officer directly liable, relying on Arizona case law. *Id.* at 204-205 (citing *Seven G Ranching*

7

1 *Co. v. Stewart Title & Trust*, 128 Ariz. 590, 593 (App.1981)). The bankruptcy court distinguished *In re Baird*, finding that in this case there was no separate fund of money set up that was to be held in trust by the Eneas for Double Bogey. Moreover, unlike in Arizona, California law clearly establishes that a corporate officer is not a trustee for corporate funds. *See Cantrell*, 329 F.3d at 1126. Therefore, the Court finds that the bankruptcy court did not commit clear error when it found that the Eneas were not directly liable for defalcation.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS the judgment of the bankruptcy court's granting the Eneas' motion for judgment on partial findings, and finds that Double Bogey may not prevent the Eneas from discharging their debts because of defalcation under section 523(a)(4), either as the alter ego of Appian or though direct liability as corporate officers.

**IT IS SO ORDERED.**

Dated: March 25, 2013

SUSAN ILLSTON
United States District Judge